## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **TAMISHA HOPKINS,** | : | |
| | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO.  18-2063** |
| **I.C. SYSTEMS, INC.,** | : | |
| | : | |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                          MAY $\underline{19}$, 2020

Tamisha Hopkins has sued debt collector I.C. Systems, Inc. for the alleged misreporting of Ms. Hopkins' debt, and a purported failure to adequately investigate that debt after Ms. Hopkins disputed it.  The underlying debt stems from Ms. Hopkins' alleged delinquency in paying rent and related fees pursuant to a lease agreement with landlord 275 Prospect Properties LLC.  After the landlord's manager, Royal Property Management, referred the debt to I.C. Systems, Inc. for collection, Ms. Hopkins responded with this litigation, asserting claims under both the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, and Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

I.C. Systems, Inc. seeks summary judgment on all of Ms. Hopkins' claims.  The Court will dismiss the claim premised on 15 U.S.C. § 1681b(a) (which governs access to credit reports), but denies summary judgment on the Section 1681s-2(b) claim (which sets the scope of reinvestigations).  The Court also will deny summary judgment on the issue of whether I.C. Systems, Inc. willfully violated the FCRA.

As to the FDCPA claims, the Court will grant I.C. Systems, Inc.'s motion and dismiss the claim premised on 15 U.S.C. § 1692e(8) only. The Court will deny summary judgment as to the claims premised on 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692f(1). The reasons for these rulings follow.

BACKGROUND[1]

## I.     The underlying apartment lease

Ms. Hopkins and 275 Prospect Equities, LLC ("275 Prospect") entered into an apartment lease agreement in December 2015. The lease was for one year, ending on November 30, 2016 and required a monthly rent payment of $1,300. Ms. Hopkins paid 275 Prospect $1,950 as a security deposit.

The lease provides that should a tenant seek to vacate or remain in the apartment, the tenant must notify her landlord at least thirty (30) days prior to the end of any lease term. Should the tenant remain in possession after the end of the term, the lease would renew for another year. The lease also states "[t]he tenant(s) or the landlord shall give thirty days written notice, to be effective the first day of any given month, to the other of intention to terminate." Lease Agreement, Ex. 8, Pl.'s Opp'n.

The lease provides for penalties should payment be untimely, stating "[i]f payment is not received on or before the fifth (5th) day of the month, a late charge of $50.00 will be added as additional rent. Furthermore if the late charge and the rent are not received on or before the tenth (10) of the month[,] a court filing fee and attorneys fee [sic] shall also be considered additional rent. All additional rent shall be due and payable in full immediately." Id.

---

[1]     The following is a recitation of the parties' presentment of facts. Unless indicated, the facts are undisputed. Moreover, every inference is taken in the light most favorable to the non-movant, Ms. Hopkins.

With respect to the security deposit, the lease states that 275 Prospect acknowledged receipt of the security deposit, and agreed to return it within thirty (30) days after the tenant vacated the apartment, provided that the tenant fully complied with the lease's terms.   According to the lease, if the tenant defaulted, the landlord did not need to resort to the security "before exercising any other remedy available to it under this Lease, of by law.   THIS MEANS THAT THE TENANT WILL NOT USE SECURITY FOR RENT, INCLUDING THE LAST MONTH OF POSSESSION, AND THE [l]andlord may dispossess for default, notwithstanding the existence of the security deposit." *Id.* (emphasis in original).

Finally, under the lease agreement, the tenant was to leave the premises in good condition upon vacating the apartment, and the lease sets forth the conditions under which the tenant may be held responsible for the cost of cleanup or repair. *Id.*[2]

According to Ms. Hopkins, the property manager during her lease was Skyrock Rentals, and Sol Feldman was her point of contact throughout her tenancy.   She claims she signed her lease through Skyrock Rentals.

Ms. Hopkins asserts that on December 1, 2016, she notified Mr. Feldman that she needed to leave the apartment because she had obtained a job that required her to relocate.   According to Ms. Hopkins, Mr. Feldman did not object and informed her that she needed to contact Royal Property Management ("Royal") to explain the situation as well.   Ms. Hopkins claims that after failed attempts to call the number he provided, Ms. Hopkins was able to get a hold of someone named "Malky" from Royal and explain her need to move.   Apparently, this Malky agreed to allow

---

[2]     While agreeing that she and 275 Prospect entered into a lease setting forth the terms between the parties "to operate[,]" without citation to any legal authority, nor with any additional specificity, Ms. Hopkins contends that "the lease is a document which speaks for itself and is not appropriate to cite verbatim in the statement of facts section."  Pl's Opp'n, pp. 11-12.  The lease appears to be signed by Ms. Hopkins, and is dated December 1, 2015.

Ms. Hopkins to cancel the remaining time on the lease, and said that Ms. Hopkins would need to send written confirmation of the move.  Ms. Hopkins moved out of the apartment at the end of December 2016.

Over the course of this litigation, I.C. Systems, Inc. received three documents from Royal which it says relate to Ms. Hopkins' lease agreement and the underlying debt at issue.  The first is a Notice to Increase dated September 20, 2016.  The notice states that starting on December 1, 2016, the rent will increase from $1,300 to $1,362 per month, the tenant is to notify the office in writing at least thirty (30) days prior to the tenant's move out date, and failure to sign the notice will be considered an election to continue renting the premises.  The notice provides that "[a]ll renewal terms are for one year.  If you must move out before the end of this lease term or subsequent renewal terms, please give the office as much notice as possible, and at least 30 days written notice. You are responsible for rent payments for 30 days from the date of written notice." Notice to Increase, Ex. J, Def.'s Mot. for Summary Judgment.  No purported property manager, that is, neither SkyRock Rentals nor Royal, is named on the notice; rather, it appears the notice came from 275 Prospect.  Ms. Hopkins contests that she ever received the notice.

Royal also provided I.C. Systems, Inc. with a letter dated January 23, 2017, stating that the landlord would retain Ms. Hopkins' security deposit because she vacated her apartment prior to the termination of her lease agreement and without notice.  In that letter, 275 Prospect also states that Ms. Hopkins had previously "been sent a notice of [her] lease renewal, and by continuing [her] residence it was considered an election on [her] part to continue renting the premises upon the terms of the lease renewal form sent to [her], thus obligating [her] to pay rent for each month from December 1, 2016 until November 30, 2017."   Letter dated January 23, 2017, Ex. J, Def.'s Mot. for Summary Judgment.  The letter also provides that "[b]y prematurely terminating your

4

lease on January 3, 2017, we have been unable to re-rent the apartment for the months following."
*Id.*

The third document is an undated letter apparently from Ms. Hopkins to "Prospect Properties LLC" stating "this is a notice that I will be moving out by January 1st. I spoke to my Landlord (Sol) on December 1st to let him know that I was moving out and he informed me to call the office the next day which was December 2nd. I called the office numerous times and received 'No Answer' so I left a message with my name and information explaining that I would be moving out. I spoke to a Malky today (December 5th) and she instructed me to write a letter to 199 Lee Avenue, Unit 201, Brooklyn NY." Letter, Ex. K, Def.'s Mot. for Summary Judgment.[3]

In February 2017, Ms. Hopkins sued Sol Feldman and Royal in New Jersey state court regarding the return of her security deposit because "those [were] the two parties that [she] had been interacting with regarding [her] security deposit." Hopkins Affidavit, Pl.'s Opp'n, ¶ 18. Ms. Hopkins amended the complaint in the state court litigation to replace Royal and Mr. Feldman with 275 Prospect as the defendant. Her complaint states:

> I am entitled to my security deposit for the following reasons: I am up to date with my rent. I mailed them a moving out [n]otice 30 days before I moved, and I left the apartment in good condition when I moved out. In conclusion, I gave my landlord security deposit and it was wrongfully returned. I am suing for double my security deposit ($1,950) owed.

Complaint, Ex. L, Def.'s Mot. for Summary Judgment.

---

[3]     Ms. Hopkins asserts that the "document is not relevant because, among other reasons, any amount due by Plaintiff was resolved through the NJ State Court Action . . . . Moreover, the referenced document merely corroborates Plaintiff's allegations that she was permitted to vacate the Apartment without liability for an entire additional year." Pl's Opp'n, ¶ 35. Ms. Hopkins also appears to oppose the admissibility of certain documents, including the Notice to Increase, this on the basis that I.C. Systems, Inc. has not been able to demonstrate Ms. Hopkins received the Notice. Statement of Facts, Pl's Opp'n, p. 22-23; 29-30.

The parties agreed to settle the New Jersey litigation for $1,000, and a stipulation of dismissal was entered in that action.  The dismissal stipulation states "It is hereby stipulated and agreed that all causes of action between the parties in the above-captioned matter are hereby dismissed with prejudice and without costs to either party."  Stipulation, Ex. 6, Pl.'s Opp'n.

## II.    The debt dispute

Royal referred a debt in the amount of $17,770 for purported unpaid rent and other fees to I.C. Systems, Inc., a debt collector. After the settlement of the state court action, Ms. Hopkins asserts she started receiving collection letters and telephone calls claiming she owed $17,770 to Royal.  She estimates that there were approximately 40 such telephone calls.

In an effort to collect the debt, I.C. Systems, Inc. sent Ms. Hopkins four letters starting in September 2017, all of which went unanswered.  When Ms. Hopkins did not respond to the first two letters, I.C. Systems, Inc. began reporting the debt to credit reporting agencies.  The initial letter incorporated the following language:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid. If you notify us in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you make a request in writing within 30 days after receiving this notice we will provide you with the name and address of the original creditor, if different from the current creditor.

Letter, Ex. A, Def.'s Mot. for Summary Judgment.

I.C. Systems, Inc. sent a fifth letter to Ms. Hopkins, on February 8, 2018, on which date the company was also able to reach her by phone.  According to I.C. Systems, Inc., during the call, Ms. Hopkins made several representations disputing the debt.  Ms. Hopkins stated that the debt

was settled during litigation, and acknowledged that the litigation involved her security deposit.[4]

Ms. Hopkins also stated that she did not owe any debt for rent because she had not been late in

making payments.[5]

About a month and a half later, I.C. Systems, Inc. received notice of a dispute from

Experian (in the form of an "ACDV").   The ACDV included the code "not his/hers" and the

following description:

> NO KNOWLEDGE OF ACCOUNT. THIS IS LANDLORD TENANT
> SITUATION THAT WAS DISPUTED IN COURT BY ME AND THIS
> LANDLORD GAVE ME A SETTLEMENT TO CLOSE[] THE CASE[.] YET IS
> TRYING TO PUT THIS NEGATIVE INFRACTION ON ME.

ACDV, Ex. 3, Pl's Opp'n.

According to I.C. Systems, Inc., in response to the ACDV, the company "confirmed the

identifying information [in the dispute] (i.e., name and address) matched the information it had on

the account" and reported the account as "verified."   Morris Decl., Def.'s Mot. for Summary

Judgment, ¶¶ 26–27.   Ms. Hopkins asserts that at the time of Ms. Hopkins' dispute, I.C. Systems,

Inc. did not contact Royal to determine if the dispute had been settled through a separate New

Jersey court action.   After the complaint was served on I.C. Systems, Inc. in this litigation, it then

contacted Royal who provided a letter and ledger detailing the amount the creditor claimed Ms.

Hopkins owed.

---

[4]      Ms. Hopkins said: "We settled because I was taking them to court for my security deposit."
Transcript of Call between I.C. Systems, Inc. and Ms. Hopkins, Ex. F, Def.'s Mot. for Summary Judgment,
at 5:2–3.

[5]      During the call, Ms. Hopkins stated: "The reason why I don't owe that because I wasn't late on my
rent. Um, and I provided them notice that I was moving out. I took -- and you can put that on your file also,
that I took them to court for my security deposit that they tried to not give me. Um, and they settled out of
court for an amount. And uh, they paid me that."   Transcript of Call between I.C. Systems, Inc. and Ms.
Hopkins, Ex. F, Def.'s Mot. for Summary Judgment, at 6:15–23.

## LEGAL STANDARD

A court can grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact finder could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks,* 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson,* 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson,* 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.,* 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a

genuine dispute." FED. R. CIV. P. 56(c).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.[6]

DISCUSSION

## I.   Ms. Hopkins' FCRA claims

Ms. Hopkins sues under two separate FCRA provisions: 15 U.S.C. § 1681b(a), which defines the reasons that a creditor may receive access to a credit report, and 15 U.S.C. § 1681s-2(b), which describes the procedures for investigating a disputed credit report.  Ms. Hopkins seeks to recover for either I.C. Systems, Inc.'s negligent or its willful noncompliance with these provisions.  *See* 15 U.S.C. § 1681o (negligent noncompliance); 15 U.S.C. § 1681n (willful noncompliance).  I.C. Systems, Inc. asks the Court to dismiss both claims.

### A.  The Section 1681b(a) claim

Section 1681b(a) allows a consumer reporting agency to furnish credit reports only under certain circumstances.  It states in relevant part:

---

[6]       I.C. Systems, Inc. contends in its reply brief that Ms. Hopkins makes statements in her affidavit without citation to the record, and that Ms. Hopkins makes a number of contradictory statements which undermine her credibility, including statements I.C. Systems, Inc. claims Ms. Hopkins did not make in a prior affidavit that related to prior summary judgment briefing.  Def.'s Reply, p. 5.  First, I.C. Systems, Inc. proffers no legal support for why Ms. Hopkins must explain the inclusion of statements that she did not make in a prior affidavit.  Second, credibility determinations are properly made by a factfinder.  To the extent I.C. Systems, Inc. seeks to undermine Ms. Hopkins' credibility, for example, by undermining Ms. Hopkins' claim that she did not know who Royal was, this occasion does not raise the proper opportunity to do so.  Third, to the extent the reply brief seeks to undermine Ms. Hopkins' statements made in her affidavit without citation to the record, if made based on personal knowledge, such statements may be considered at summary judgment.  *See Palladino v. Newsome*, 885 F.3d 203, 209 (3d Cir. 2018) ("[A] single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment. This is true even where . . . the information is self-serving.")  Moreover, the Court does not consider hearsay statements, or those proffered proofs that it does not deem to be competent evidence.  Nor does it rely on what the Court has determined are immaterial facts.

> [A]ny consumer reporting agency may furnish a consumer report under the following circumstances and no other . . . (3) To a person which it has reason to believe . . . (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer[.]

15 U.S.C. § 1681b(a)(3)(A).

I.C. Systems, Inc. seeks dismissal of this claim.  It correctly argues that it sought to collect "an account" under the statute because courts have defined a debt as an account.  *See Obarski v. Client Servs., Inc.*, 554 F. App'x 90, 91 (3d Cir. 2014) (per curiam) (collection of "payment on . . . delinquent Citibank credit card" was "collection of an account" for purposes of Section 1681b(a)(3)(A)).

In a footnote, Ms. Hopkins argues the Court should deny summary judgment because the claim relies on the validity of the underlying debt, (which she argues is invalid), and ultimately the jury must determine whether the debt is valid and whether the state court action settled the at-issue debt.[7]  However, this argument misses the mark.  Accepting that for these purposes, "validity" and "verification" are fungible concepts in this limited context, the argument that the underlying debt must be valid has been judicially rejected.  *See, e.g.*, *Fritz v. Capital Mgmt. Servs., LP*, No. 12-1725, 2013 WL 4648370, at *6 (W.D. Pa. Aug. 29, 2013) (granting summary judgment on the FCRA claim and rejecting plaintiff's argument that the defendant had failed to prove the existence of the underlying debt because the plaintiff was not entitled to any validation of the at-issue debt prior to debt collection).  Whether the underlying debt is held to be valid, or was even disputed, at the time that I.C. Systems, Inc. sought the credit information related to its collection of the debt, does not control whether I.C. Systems, Inc. had a permissible purpose in seeking the credit

---

[7]     Ms. Hopkins does not argue, and, therefore, the Court need not address, whether I.C. Systems, Inc. complied with the other provisions of Section 1681b.

information after it was referred the debt. Consequently, the Court finds summary judgment on this claim appropriate because collection of a debt is a permissible purpose, and there is no obligation under Section 1681b(a) for debt collectors to independently verify the debt prior to seeking credit information. *See Eaton v. Plaza Recovery, Inc.,* No. 12-3043, 2014 WL 29561, at *3 (S.D. Tex. Jan. 3, 2014) (granting summary judgment on FCRA claim and noting that "the FCRA does not require a debt collector to verify, validate, or 'prove up' a person's debt before seeking a credit report.")).

**B. The Section 1681s-2(b) claim**

Section 1681s-2(b) describes the duties of debt collectors to investigate disputed credit reports. "A furnisher of information is under no duty to conduct an investigation regarding a disputed entry on a consumer's credit report pursuant to § 1681s–2(b) until the furnisher receives notice of the dispute from a consumer reporting agency." *Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 609 (E.D. Pa. 2008). Furthermore, a "consumer's direct dispute to the furnisher does not trigger a furnisher's duties under § 1681s–2(b)." *Shap v. Capital One Fin. Corp.*, No. 11-4461, 2012 WL 1080127, at *5 (E.D. Pa. Mar. 30, 2012) (citation omitted). After being notified of a dispute by a consumer reporting agency, a debt collector must "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s–2(b)(1)(A). The investigation need not exceed the scope of the dispute. *See Krajewski*, 557 F. Supp. 2d at 609-610 (holding that furnisher's investigation may not have been reasonable because it failed to investigate all of the detailed allegations in the notice of dispute proffered by the credit reporting agency). Although "the question whether an investigation is reasonable 'is a factual question normally reserved for trial,' 'summary judgment is proper if the reasonableness of the defendant's procedures is beyond

11

question.'" *Id.* at 609 (quoting *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005)).

The propriety of I.C. Systems, Inc.'s investigation, is, then, contingent upon the ACDV dispute it received from the credit reporting agency Experian.[8]  Experian catalogued Ms. Hopkins' ACDV dispute and forwarded it to I.C. Systems, Inc., memorializing the dispute as Ms. Hopkins having no knowledge of the account, and that the debt related to a landlord-tenant situation that was resolved by way of settlement after state court litigation.

I.C. Systems, Inc. makes two arguments about the reasonableness of its investigations, namely, that (1) it did not need to investigate at all, because debt collectors are not required to investigate the legal validity of the underlying debts they report; and (2) it otherwise conducted a reasonable investigation.

### i.   Whether the dispute was legal rather than factual.

A line of cases, which this Court has recently embraced in the context of a parallel FCRA provision, suggests that furnishers "are only liable for patent, factual inaccuracies contained in credit reports" but "are not required to investigate the legal validity of the underlying debts they report." *Berkery v. Equifax Info. Servs. LLC*, No. CV 18-3417, 2019 WL 1958567, at *3 (E.D. Pa. May 2, 2019).[9]  The legal inaccuracy exception is grounded in the idea that "consumer reporting agencies are ill equipped to adjudicate contract disputes, [and so] courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Id.* at *4 (quotation and citation omitted).

---

[8]      Although Ms. Hopkins also disputed the charge with I.C. Systems, Inc. directly during a phone call, again, that dispute has no effect on its investigation obligation under Section 1681s-2(b).  *Shap*, 2012 WL 1080127, at *5 (stating that when a consumer contacts a debt collector directly, it only creates an obligation under 15 U.S.C. § 1681s-2(a)(8), but "subsection (a)(8). . . does not provide a private cause of action").

[9]      For ease of reference, the Court calls this the "legal inaccuracy exception."

As a threshold issue, the Court must determine whether the information at issue stems from a factual inaccuracy, and not a legal one. *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010) (noting that a claim under Section 1681s-2(b) requires a plaintiff to show some factual inaccuracy in the furnisher's credit reporting). While the legal inaccuracy exception has developed around 15 U.S.C. § 1681i, which sets the requirements for reinvestigations by credit reporting agencies as opposed to furnishers, like I.C. Systems, Inc. here, nonetheless, federal courts have extended the legal inaccuracy exception to FCRA investigations performed by furnishers. *See Van Veen v. Equifax Info.*, 844 F. Supp. 2d 599, 605 (E.D. Pa. 2012) (applying exception to Section 1681s–2(b)); *Chiang*, *supra*, 595 F.3d at 37 ("Given the considerable overlap between credit reporting agency's responsibility to reinvestigate and a furnisher's duties under [Section] 1681s–2(b), it would be inconsistent for plaintiffs to bear a weightier burden in suits against a credit reporting agency under § 1681i(a) than in suits against furnishers under § 1681s–2(b).").

Assuming this legal inaccuracy exception applies to furnishing debt collectors, the dispute in this case appears factual in nature. Based on the dispute submitted by Ms. Hopkins to Experian, two alleged factual inaccuracies emerge: (1) that I.C. Systems, Inc. was trying to collect the debt from the wrong person, and (2) that Ms. Hopkins had already settled the debt.

The first inaccuracy is not legal. Whether Ms. Hopkins was the right debtor is most sensibly seen as a question of fact.

The second inaccuracy is also factual. Whether a settlement exists is a question of fact: there is a simple yes or no answer that I.C. Systems, Inc. could have obtained by asking Royal

whether it had settled the at-issue debt, or by reviewing an electronic docket search, a matter of routine activity in the debt documentation industry.[10]

I.C. Systems, Inc., citing *DeAndrade v. Trans Union LLC*, 523 F.3d 61 (1st Cir. 2008), argues that any time a plaintiff disputes that they owe the underlying debt, that dispute is necessarily legal. But that argument oversimplifies the inquiry. The question is not whether the plaintiff alleges that she does not owe the debt, but the question is why the plaintiff alleges that she does not owe the debt. If a plaintiff argues, for example, that she already paid the debt, that is not a legal dispute. A call or some other form of inquiry to the creditor (or court) will confirm whether the plaintiff has paid the debt or not, or whether a judgment has been marked satisfied. But if the plaintiff argues that the debt is invalid because the creditor breached a contract, that dispute would be legal. In *DeAndrade*, for example, the plaintiff attacked the validity of the mortgage underlying his debt. *Id.* at 68. Whether a mortgage is valid certainly is a quintessential legal question, as compared to a factual question such as whether a mortgage has been recorded. The ability to create a labyrinth of hypotheticals or sub-sets to turn a relatively straight-forward factual matter into an elaborate legal one is not the standard the Court will employ.

Here, Ms. Hopkins argues that she does not owe the debt because I.C. Systems, Inc. has the wrong debtor, and additionally, she already settled the debt. Because these are alleged factual inaccuracies, the debt collector had a duty to reasonably (not exhaustively) investigate them both. Moreover, when Ms. Hopkins represented that the debt was settled, I.C. Systems, Inc. would not have had to conduct any legal analysis to contact the creditor, Royal, to find out whether there was a settlement, in fact. If, during that inquiry, Royal disputed that the settlement covered the debt,

---

[10]     At least arguably, a potential follow-up question, whether that settlement applies to the at-issue dispute, is a legal question. But I.C. Systems, Inc. did not take even the first step to determine from Royal whether any settlement existed.

only then would Defendant have encountered a legal dispute.  Because I.C. Systems, Inc. never took that first step, the Court finds the legal inaccuracy exception does not apply, and proceeds to assess whether there is the requisite triable dispute regarding the reasonableness of the investigation conducted by I.C. Systems, Inc.

### ii. Whether I.C. Systems, Inc. conducted a reasonable investigation into Ms. Hopkins' dispute.

As noted above, the question of reasonableness is typically a matter for a fact finder, but summary judgment may be proper if the reasonableness of the defendant's procedures is beyond question.  "[W]hat is a reasonable investigation by a furnisher may vary depending on the circumstances. For instance, a more limited investigation may be appropriate when [credit reporting agencies] provide the furnisher with vague or cursory information about a consumer's dispute. The statute is clear that the investigation is directed to the information provided by the [credit reporting agency]." *Chiang*, 595 F.3d at 38.

As presented to the Court, I.C. Systems, Inc.'s procedures were not reasonable "beyond question."  As to the two inaccuracies the Court has already identified, whether I.C. Systems, Inc. was trying to collect the debt from the right person, and whether Ms. Hopkins and the creditor Royal had already settled the debt, the parties do not dispute that I.C. Systems, Inc. investigated the disputed inaccuracy related to the right debtor.[11]  However, according to the record, I.C. Systems, Inc. did not seek to corroborate whether the settlement was indeed between Royal and Ms. Hopkins.  It did not even communicate with the creditor, Royal, until after the complaint was filed in this action.  *See* Statement of Fact, Def.'s Mot. for Summary Judgment, ¶ 23 (After

---

[11]     *See* Statement of Facts, Pl.'s Opp'n, ¶ 20b (I.C. Systems, Inc. "searched its internal records to ensure that the name and address for Ms. Hopkins was correct.").

receiving the summons and complaint in this case, I.C. Systems, Inc. "then contacted the client creditor, who provided a letter and ledger detailing the amount ($17,770) the creditor claims is due from Plaintiff.").[12]

I.C. Systems, Inc. contends that its investigation amounting to a review of its internal records was sufficient.  It argues that the ACDV's dispute was internally inconsistent, with Ms. Hopkins indicating she had no knowledge of the account but then providing some detail about the alleged account.  However, Defendant's perception of the internal inconsistency does not remove from a jury's determination that it was unreasonable for failing to inquire into whether Royal had settled the rent issue.

I.C. Systems, Inc. also argues that it need not have contacted Royal because of Ms. Hopkins' apparently previously-made contradictory statements.  *See* Def.'s Mot. for Summary Judgment, p. 24 (Ms. Hopkins' dispute to Experian was "in direct conflict[] with information Plaintiff provided to Defendant" by telephone on February 8, 2018.).  For example, I.C. Systems, Inc. contends that over the phone Ms. Hopkins made comments to it suggesting that the settlement between Ms. Hopkins and Royal was unrelated to the at-issue debt.  I.C. Systems, Inc. also states that while Ms. Hopkins "first claimed, like the narrative in the subsequent [Experian dispute], that the debt at issue was settled during her litigation with the landlord[,] later during that same call, [Ms. Hopkins] acknowledged that the referenced litigation was in fact limited to her claim for a return of her security deposit and not the $17,770.00 alleged financial obligation for unpaid rent." *Id.*  Defendant also contends that "by the time [it] received the ACDV on March 29, 2018, Plaintiff had already acknowledged that her claim the debt had been 'settle[d]' in 'court by [Plaintiff] and [her] landlord' was inaccurate. The evidence is clear the ACDV's narrative as to the alleged

---

[12]     While I.C. Systems, Inc. contends that the letter and ledger prove the correctness of the debt, notably, neither document references at all the underlying settlement at issue.

'settlement' of the subject financial obligation was inaccurate, at best, and arguably fraudulent." *Id.*

Perhaps Ms. Hopkins' communications were contradictory. Perhaps they only needed to be reviewed with an eye (or ear) to trying to reconcile what she was saying. Be that as it may, I.C. Systems, Inc. overlooks that "[the] consumer's direct dispute to the furnisher does not trigger a furnisher's duties under § 1681s–2(b)." *Shap*, 2012 WL 1080127, at *5. Instead, the obligation was triggered by the report I.C. Systems, Inc. received from Experian. It is therefore a factual issue whether I.C. Systems, Inc. was reasonable not to investigate Ms. Hopkins' claim to Experian that she had already settled the at-issue debt. Consequently, the Court denies summary judgment as to Plaintiff's FCRA claim. The question of reasonableness properly belongs to a jury.

**C.  Whether the record supports that I.C. Systems, Inc. acted willfully.**

I.C. Systems, Inc. also seeks summary judgment on the issue of whether it engaged in willful non-compliance with the FCRA. The FCRA includes two private causes of action enforcing the above discussed statutory requirements. 15 U.S.C. § 1681n imposes civil liability on "[a]ny person who willfully fails to comply with any requirement imposed" by the FCRA. *Id.* In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007), the Supreme Court held that this provision also covers reckless violations of the FCRA and acknowledged the "generally understood" meaning of recklessness reaches "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 68 (citation omitted).

Ms. Hopkins only has one viable FCRA claim, whether I.C. Systems, Inc. reasonably investigated the disputed credit report, under § 1681s–2(b). As noted above, the reasonableness of a dispute inquiry is typically a fact question. It also follows that whether there was "an unjustifiably high risk" of an unreasonable investigation is fact-intensive and more appropriate for

the jury.  *See Smith v. HireRight Sols., Inc.*, 711 F. Supp. 2d 426, 434 (E.D. Pa. 2010) (In FCRA

case applying § 1681n, "whether an act was done with knowing or reckless disregard for another's

rights remains a fact-intensive question.") (citation omitted); *Horton v. Trans Union, LLC*, No. 12-

2072, 2015 WL 1055776, at *10 (E.D. Pa. Mar. 10, 2015) ("[W]hether [defendant's] actions were

objectively unreasonable, rising to the degree of 'reckless disregard' for its obligations under

[§ 1681s-2(b) of] the FCRA, is a question for a jury."). Because the FCRA's willfulness

prohibition also reaches conduct that is reckless, and recklessness is a jury question, the Court

denies I.C. System's motion for summary judgment on the question of willfulness.

## II.    Ms. Hopkins' FDCPA Claims

While Ms. Hopkins' pleadings do not cite specific provisions of the FDCPA, in her

opposition brief, she appears to clarify that she sets forth four claims under the FDCPA, namely,

violations of Sections 1692e, 1692e(2)(A), 1692e(8), and 1692f(1).

### A.  Dispute over which FDCPA provision Ms. Hopkins can invoke.

According to I.C. Systems, Inc., Ms. Hopkins' FDCPA claims are "non-specific but are

predicated entirely on the alleged "'reporting of inaccurate information to credit reporting

agencies[.]" Def.'s Mot. for Summary Judgment, p. 31.  Thus, it claims Ms. Hopkins can proceed

only under 15 U.S.C. § 1692e(8), because that provision of the FDCPA specifically addresses

credit reporting.  I.C. Systems, Inc. also argues that the canon of statutory construction that "the

specific governs the general" demands that Ms. Hopkins sue under this specific FDCPA provision

prohibiting false communications about credit information only, and not the more general

provisions that do not specifically reference credit reporting.

I.C. Systems, Inc.'s argument takes an unnecessarily narrow view of the amended

complaint.  The pleadings are not based solely on purported misrepresentations to credit reporting

agencies.  *See, e.g.*, Am. Compl., ¶ 16 ("Defendant also caused approximately 40 collections calls to be made and approximately 5 collection [letters] to be issued to Plaintiff relating to the debt collection of the false debt.")

Moreover, I.C. Systems, Inc. does not cite any binding precedent involving the FCRA suggesting that claims premised on false or inaccurate statements made during credit reporting can only proceed under Section 1692e(8), but not other provisions.  Indeed, at least one court in this jurisdiction determined otherwise.  *See Butler v. Experian Info. Sols.*, No. 14-07346, 2016 WL 4699702, at *2 (E.D. Pa. Sept. 7, 2016) (granting default judgment because "report[ing] inaccurate information . . . to credit reporting agencies" was sufficient to "state a cause of action" under Section 1692e(2)(A)).

### B.  The Viability of the remaining FDCPA claims

#### i.  The Section 1692e(8) claim

As noted, Section 1692e enumerates examples that, if proven, are violations of the FDCPA, including "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed[.]" 15 U.S.C. § 1692e(8).

With respect to the Section 1692e(8) claim, I.C. Systems, Inc. has carried its burden in establishing that no fact supports that it knew or should have known that the credit information it provided about Plaintiff was actually false.

First, I.C. Systems, Inc. has submitted a declaration from its corporate representative stating that its initial report to Experian accurately reflected the debt based on representations made by Royal to I.C. Systems, Inc.  The declaration states that "[a]t the time of referral[,] Royal represented to ICS [that] Plaintiff owed $17,770." Decl. of Christopher Morris, Def.'s Mot. for

Summary Judgment, ¶ 9.   In her response to I.C. Systems, Inc.'s statement of material facts, Ms. Hopkins does not dispute that Royal represented to I.C. Systems, Inc. that Ms. Hopkins owed a $17,770 debt.  Statement of Facts, Pl.'s Opp'n, ¶¶ 2–3.

Second, the record reflects that Ms. Hopkins did not dispute the debt with I.C. Systems, Inc. until February 8, 2018, and once Ms. Hopkins disputed the debt, I.C. Systems, Inc. updated Ms. Hopkins' account to reflect her dispute.  I.C. Systems, Inc. received the ACDV from Experian on March 29, 2018.  But even at these times, I.C. Systems, Inc. had no reason to know the debt was false, nor should it have known.  At best, it was aware of an allegation of inaccuracy.

Third, the record shows that Royal continues to maintain that Ms. Hopkins owes the debt as stated in Ms. Hopkins' credit report.  After Ms. Hopkins initiated this action, the creditor, Royal, sent a letter to I.C. Systems, Inc. confirming the amount of the debt, that the debt was owed to Royal, and the reason for the debt, *i.e.*, that Ms. Hopkins "vacated [her apartment] unit prior to the termination of [her] lease year, and with a remaining balance.  Therefore, according to the lease, the tenant is responsible for every month's rent of the entire lease year."  Verification Letter from Royal, Ex. H., Def.'s Mot. for Summary Judgment. Given that the debt was referred to I.C. Systems, Inc. by Royal, and in light of Royal's continued belief that Ms. Hopkins owes the debt, I.C. Systems, Inc. could not have known or found out that the debt was false.  Because Ms. Hopkins has not submitted any evidence showing that I.C. Systems, Inc. knew or should have known that the information in the credit report was false, the Court will dismiss the Section 1692e(8) claim.

### ii.   The Section 1692e and 1692e(2)(A) claims

15 U.S.C. § 1692e prohibits a debt collector from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt."  *Id.* It further provides, "[w]ithout limiting the general application of Section 1692e, the false representation of the

character, amount, or legal status of any debt is a violation of th[e] section." 15 U.S.C. §§ 1692e & 1692e(2)(A).

The FDCPA is a remedial and strict liability statute, where violations are assessed from the perspective of the least sophisticated consumer. *Farren v. RJM Acquisition Funding, LLC*, No. 04-995, 2005 WL 1799413, at *5 (E.D. Pa. July 26, 2005). This is a "straightforward, objective standard." *Glover v. F.D.I.C.*, 698 F.3d 139, 149 (3d Cir. 2012).

To support her Section 1692e(2)(A) claim, Ms. Hopkins argues that the communications contained several falsities, with the truth including that (1) Ms. Hopkins did not owe any balance at the end of her lease because she gave the requisite notice she was going to vacate the apartment and she paid her rent on time; (2) if any debt was owed, it was owed to Ms. Hopkins' former landlord, 275 Prospect; (3) if any debt was owed, the debt was miscalculated; and (4) if any debt was owed, it was released through the state court settlement. In her opposition brief, she attempts to distinguish her Section 1692e claim from her Section 1692e(2)(A) cause of action by arguing I.C. Systems, Inc. "repeatedly asserted that Royal Property was the creditor of the $17,770 debt. This was accomplished through electronic communications to credit reporting agencies, telephone calls to Plaintiff and letters sent to Plaintiff. The representations in these communications were false and misleading because they consistently named Royal Property as the creditor which made it appear as if Plaintiff owed an entirely separate debt to an entity other than 275 [Prospect]." Pl.'s Opp'n, p. 46.

Factual disputes exist as to the validity or falseness of the representations, and, additionally, whether I.C. Systems engaged in misleading behavior. The Court need not address all of Ms. Hopkins' assertions, because the following factual disputes alone render summary judgment inappropriate. As to whether the alleged $17,770 debt is owed at all, Ms. Hopkins claims an

individual named "Malky," of Royal, agreed she could terminate her lease and move out. Ms. Hopkins also contends, despite I.C. Systems, Inc.'s position that she owes $17,770, which assumes a monthly rent of $1,326, she never received the Notice of Increase of rent. Thus, remaining open are the questions of fact as to whether Ms. Hopkins gave the proper notice to vacate (including whether oral notice was sufficient under a modified agreement), whether she paid her rent on time, and whether the amount of the debt owed is correct. The record also suggests, when viewed in the light most favorable to Plaintiff, that 275 Prospect and Royal are separate companies, that Ms. Hopkins interacted at the start of her lease with a different property management company, and that 275 Prospect countersigned Ms. Hopkins' lease. Ms. Hopkins asserts that the debt at issue, if owed, is owed to 275 Prospect, but not to Royal. Yet, I.C. Systems, Inc. continues to represent that the debt is owed to Royal. There is at least an *arguable* dispute of fact as to who the proper creditor is, and the strength of this theory may be assessed at trial.[13] Because these material factual disputes exist, the Court will not dismiss these claims.[14]

---

[13]     I.C. Systems, Inc. asserts that "[t]he FDCPA excludes from its definition of 'debt collector' 'any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation . . . .'" Def.'s Mot. for Summary Judgment, p. 39. It then contends the exception "applies when: (1) an entity has a 'fiduciary obligation'; and (2) the collection activity was 'incidental' to that fiduciary obligation." *Id.* According to Defendant, Royal meets the requirements of this test, as the property manager of 275 Prospect, and was acting in the scope of its fiduciary role; thus, "Royal and 275 Prospect are the same entity from the viewpoint of the least-sophisticated consumer." *Id.* The argument fails. To the extent that Defendant asserts that Royal is exempt from FDCPA liability pursuant to the exception, Royal is not a defendant in this case. I.C. Systems, Inc., the debt collector is. Moreover, factual disputes arguably exist as to whether a least sophisticated debtor would be misled or deceived by the representation that Royal was the proper creditor.

[14]     The Court also rejects I.C. Systems, Inc.'s argument that it did not violate the FDCPA because its communications and collection actions were not false, deceptive, misleading, unfair, or unconscionable because it had no duty to investigate the validity of the underlying debt, and it reasonably relied on the representations of Royal. The argument is of no moment. First, Defendant asserts this argument in support of the dismissal of FDCPA claims that Plaintiff does not assert. Second, Defendant clarifies in its reply brief that it does not assert a bona fide error defense. Such a defense, codified in 15 U.S.C. § 1692k(c), is a defense from otherwise applicable strict liability, stating that:

### iii.  The Section 1692f(1) claim

Section 1692f prohibits "us[ing] unfair or unconscionable means to collect or attempt to collect any debt[,]" and provides, without limiting its general application, enumerated instances of misconduct that would violate the FDCPA. 15 U.S.C. § 1692f.  Among these is Section 1692f(1), pursued by Plaintiff, which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.*  "By its own terms, then, the subsection addresses the abusive practice of collecting an amount greater than that which is owing." *Beattie*, 754 F. Supp. at 392.

Seeking dismissal of the Section 1692(f)(1) claim, I.C. Systems, Inc. asserts it was properly authorized by Royal to collect a debt of $17,770.00 from Ms. Hopkins because the Notice to Increase stated that the new monthly rent amount would be $1,326.00, starting in December 2016,

---

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

*Id.*  Thus, such an argument is not relevant to the assertion of this affirmative defense.  Third, as the Court has already noted, liability under Sections 1692e and 1692e(2)(A) is strict.  In other words, I.C. Systems, Inc. if found liable, will be found so regardless of its knowledge or intent of the falsity, deceptiveness, or misleading nature of its representations.  *See, e.g.*, *Glover*, 698 F.3d at 149 ("The FDCPA is generally characterized 'as a 'strict liability' statute because 'it imposes liability without proof of an intentional violation.' . . . Section 1692e(2)(A), which makes it unlawful for a debt collector, 'in connection with the collection of any debt,' to make a 'false representation' about the 'character, amount or legal status of any debt,' is no different. The language of this provision creates a straightforward, objective standard. Nothing suggests that an allowance is to be made for a defendant's lack of knowledge or intent.").  *See also Owens v. JP Morgan Chase Bank*, No. 18-1421, 2020 WL 1888857, at 4 (W.D. Pa. Apr. 16, 2020); *Hylton v. AmeriFinancial Solutions, LLC*, No. 18-2206, 2018 WL 6044734, at *2-3 (E.D. Pa. Nov. 19, 2018) (discussing strict liability of several provisions of the FDCPA).  Simply, the argument that it did not need to investigate the validity of the underlying debt, and that it could rely on the representations of the creditor, is not determinative of the issues on these claims.  Moreover, I.C. Systems, Inc. does not cite to a single precedential or persuasive case that holds, under similar factual circumstances, a lack of a duty to independently investigate the debt wholesale permits summary judgment on these claims.  *See* Def.'s Motion for Summary Judgment, pp. 31-32.

23

and Ms. Hopkins failed to return a signed copy of the Notice to Royal, thus electing to renew the lease for an additional year, at the increased monthly rate. Moreover, because Ms. Hopkins remained in possession of the apartment after the lease term expired on November 30, 2016, the lease automatically renewed for another year. Finally, I.C. Systems, Inc. claims the resolution of the state court action only involved her security deposit and did not involve any issues regarding Plaintiff's unpaid rent.[15]

However, as already noted by the Court, there are factual issues as to whether the amount allegedly owed is actually owed, and whether the Notice of Increase ever reached Ms. Hopkins. Where, for instance, the Notice of Increase was never received, that fact would undermine the notion that there was an agreement or assent on the part of Ms. Hopkins that allowed I.C. Systems, Inc. to collect $17,770 in debt. Consequently, the Court denies summary judgment on this cause of action.

## CONCLUSION

For the aforementioned reasons, the Court denies in part and grants in part the motion for summary judgment, granting with respect to the FCRA claim premised on 15 U.S.C. § 1681b(a) and the FDCPA claim premised on 15 U.S.C. § 1692e(8) only. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[15]    The Court notes that it remains to be possibly addressed by the parties in the future whether the defense focus on the state court litigation as involving the security deposit then is an admission that the lease had been terminated, inasmuch as under the lease a dispute about a security deposit *follows* the lease termination.